# Greenan v. Eggeling, Appellant.

*Negligence—Master and servant—Instruction of servant—Laundry—Mangle.*

If there are different ways in which work may be done which an employee is required to do, one of which has been shown by experience to be safe, and another dangerous, an inexperienced servant is entitled to instructions in regard to the proper manner of doing it.

In an action by a girl seventeen years old against her employer, the proprietor of a laundry, to recover damages for injuries sustained while working at a mangle, the case is for the jury where the evidence is conflicting as to whether the plaintiff received any instruction as to the method of operating the machine.

In such a case if it appears that the plaintiff complained of the machine, not because of any danger which she feared, but because of the failure of the machine to do good work, she cannot be charged with assuming a risk by continuing to work at the machine.

Where the evidence is conflicting as to whether hand guards were customarily used on mangles, the question is for the jury to determine whether the employer was negligent in not providing a hand guard.

*Trial—Witness—Subpœna.*

Where a number of attempts have been made to subpœna a witness who had testified at a previous trial all of which have failed, the testimony of the witness at the previous trial may be offered in evidence.

Argued Oct. 13, 1905. Appeal, No. 107, Oct. T., 1905, by defendant, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1902, No. 672, on verdict for plaintiff in case of Henrietta Greenan, by her father and next friend, Peter F. Greenan, and Peter F. Greenan v. Frederick W. Eggeling. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries.   Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented the following point:

4. The law imposes upon the master the duty of giving proper instructions to a young and inexperienced servant employed about a dangerous machine, and these must.be sufficient to enable a person of her youth and inexperience to perform her duty with safety. *Answer:* Affirmed. [2]

Defendant presented these points:

2. That the plaintiff, having worked at the mangle for almost a month prior to the accident, should have known the dangers to which she was exposed and should have exercised care, and if she did not do so she was guilty of contributory negligence and cannot recover.   *Answer:* Refused. [3]

6. The plaintiff alleged that the machine jumped and jerked, and that she had made complaint of the said jumping and jerking, and afterwards continued to work upon the machine.   She therefore had knowledge of the alleged defect, and was required to exercise more than the ordinary degree of care, and if she did not exercise such care she was guilty of contributory negligence and cannot recover.   *Answer:* Refused. [4]

1. Under all the evidence in the case the verdict should be for the defendant.   *Answer:* Refused. [6]

Verdict and judgment for Henrietta Greenan for $1,500 and for Peter Greenan for $414.   Defendant appealed.

*Errors assigned* were (2,–4, 6) above instructions, quoting them; (1) in admitting the testimony of A. K. Potter given at a previous trial; and (5) that the charge as a whole was inadequate.

*Samuel Peltz,* for appellant, cited: Higgins v. Fanning, 195 Pa. 599.

*Jacob B. Walker,* for appellees, cited: Welsh v. Butz, 202 Pa. 59; Sheetram v. Trexler Stave, etc., Co., 13 Pa. Superior Ct. 219; Cargill v. Towel Supply, etc., Co., 185 Pa. 269; Rauch v. Smedley, 208 Pa. 175.

OPINION BY HENDERSON, J., March 12, 1906 :

The hand of Henrietta Greenan, one of the plaintiffs, was injured in a mangle in use in the defendant's laundry. The plaintiffs charge that the accident occurred because of the negligence of the defendant : (1) in neglecting to instruct the girl in regard to the dangerous character of the machine and the proper mode of operating it ; (2) in the use of a defective machine ; (3) in failing to maintain a hand guard in front of the rolls of the mangle. The plaintiff who was injured was about seventeen years old and, as shown by her evidence, had been at work in the laundry about three weeks, during about two of which she was employed at the mangle. Her service for the first two days of her employment was in straightening out collars, after which she was set at work at the mangle. According to her testimony she never saw a mangle before, and was inexperienced in its use. She testified positively that no instruction was given her as to the danger incident to the operation of the machine or the proper manner of doing her work in view of the risk. She was contradicted upon this subject by the defendant, who alleged that he stood beside her and fed the machine when she first came to work, and that he cautioned her of the dangers of the machine. The character of the instruction is indicated by a part of the defendant's testimony : " Q. You did not caution her against anything yourself ? A. I cautioned her against an accident, it being a dangerous machine. Q. What were your words ? A. I cannot just recall. Q. As near as you can recall them, what did you say ? A. Well, I might have said to her, ' Hettie, be careful that the machine don't get your hand caught.' Q. Anything else ? A. There might have been some more words. Q. Then you think that was practically all you said, so far as you can remember ? A. Yes, that was all I said so far as I remember." He also testified that the operator's fingers ought not to go within three inches of the line of contact of the auxiliary roll. Other witnesses were called to corroborate the defendant on this point, but the language of the defendant as given by them seems to have had reference rather to the diligence of the girl than care with regard to the risks of her employment. One of the witnesses said, " He (the defendant) told her he did not want her to fool but to be careful and pay attention to her

work." Another said, "I was there on Monday afternoon when he told her to be careful; to stop her fooling and attend to the work." A third testified: "On Mondays when we were there he told us not to fool and to attend to our work." A clear issue of fact was raised by the evidence on this point which the jury alone could decide. If there are different ways in which work may be done which an employee is required to do, óne of which has been shown by experience to be safe and another dangerous, an inexperienced servant is entitled to instruction in regard to the proper manner of doing it. In accepting the employment the plaintiff assumed the risk of any danger which was obvious to a person of her age and experience. The defendant was charged with the duty of instructing her as to the proper use of the machine to avoid hazards which might not be apparent to one lacking experience. The obligation of the employer is well stated in Tagg v. McGeorge et al., 155 Pa. 368: "When young persons without experience are employed to work with dangerous machines it is the duty of the employer to give suitable instructions as to the manner of using them and warning as to the hazard of carelessness in their use; if the employer neglects this duty, or if he give improper instructions, he is responsible for the injury resulting from his neglect of duty." A person of ordinary intelligence would know presumably that if her hand were caught between the rolls of a mangle it would be injured. An inexperienced person might not know, however, what liability there was that her hand might be so caught while engaged in the manipulation of the articles passed through the machine. A youthful operator is, therefore, entitled to instruction as to the mode of using the machine as well as admonition in regard to its danger: Sheetram v. Trexler Stave & Lumber Co., 13 Pa. Superior Ct. 219; Brislin v. Kingston Coal Co., 20 Pa. Superior Ct. 234, and cases there cited. At the time of the accident the plaintiff was engaged in putting a large tablecloth through the mangle. She thus described the occurrence of the accident: "When I was feeding the cloth it jerked, and I had my hand feeding the cloth in, and before I could pull my hand it pulled my hand in with the cloth." "Q. You had just started the cloth in with the rollers? A. Yes, sir. Q. When it gave a sudden jerk and pulled your

hand before you had time to get it away? A. Yes, sir." At another point in her examination she said: " A. I was feeding and I had my hand there; I was straightening out on this side of the roller. Q. Which side, the right side? A. Yes, sir. Q. With your hand that was injured? A. Yes, sir; I had started feeding it in and it gave a sudden jerk and pulled my hand in before 1 had a chance to pull it out from the table cover." . She alleged that the machine worked defectively; that it jumped and jerked; that she called the attention of the defendant to the defect several times and that he sent his engineer, who came and " did something to these screws on the top." The machine not working any better after that, she made further complaint to the defendant, but it was not repaired afterwards. The effect of the jumping and jerking was that the machine " didn't feed right, it didn't iron right." The jerk which pulled the plaintiff's hand between the rolls was stronger and more sudden than any that had occurred before. The plaintiff's complaint in regard to the action of the machine seemed to be rather because of its failure to do good work than because of danger which the operator feared. According to her testimony she did not consider it dangerous, but found fault because the clothes did not come out right. There was evidence that a machine in proper condition would not jump and jerk, and that there were many things which might cause such action. The evidence offered by the defendant was contradictory to that of the plaintiff's in regard to the efficiency of the machine, several witnesses testifying that when they used it, it worked well. The defendant admitted, however, that the plaintiff who was injured had complained to him about the covering of the rolls creeping to one side, due to an uneven pressure, and his engineer stated that he had made repairs on the machine by fixing the belt or regulating the machine to keep the roll running straight. It may be that the weight of the evidence was in favor of the defendant upon this point, but the credibility of the witnesses was a subject for the consideration of the jury who saw them and observed their manner of testifying.

No hand guard was attached to the mangle. Evidence was offered to show that substantially all machines of that kind are made with hand guards, and that a proper guard would prevent

injuries to the hands, and that this was not a safe machine for a person to operate without a guard. And this seems to be admitted by the defendant, who testified that at the time of the accident he did not know that the machine should have had a guard when he got it, but that afterwards he knew there should be some protection. It was shown by the defendant that there were numerous mangles in use to which hand guards were not attached, but it was clearly a question of fact under the evidence whether they were customarily used, and whether a machine could be safely operated without such safeguard.

Complaint is made of the instruction of the court in affirming the plaintiff's fourth point (second assignment). The objection is not well taken, however. The point is expressed in the language of the Supreme Court in Welsh v. Butz, 202 Pa. 59; and it was, therefore, the duty of the trial judge to affirm it. It does not, as contended by the appellant, assume that the plaintiff was inexperienced. It was given to the jury as the law applicable to the case if they should find the facts to be as testified to by the plaintiff. The question of experience was fairly presented to the jury, and it was instructed that if the plaintiff had, or represented to the defendant that she had experience, it was not necessary for him to give her any instructions.

The defendant's second point (third assignment) was properly refused. It was a question of fact whether the plaintiff should have known the dangers to which she was exposed, taking into consideration her age, experience and knowledge of the machine which she was operating. There is nothing in the case to indicate that she knew anything of the use of hand guards, or that the defective action of the machine might sudenly and unexpectedly draw her hand between the rolls. Of a similar point in Welsh v. Butz, *supra*, the court said: "This prayer for instructions overlooks the fact that to relieve the defendant from his duty to instruct an inexperienced youth engaged to work about a dangerous machine it is not sufficient for the employee to know that the machine is dangerous; it must also appear that he appreciated the danger and knew the means of escaping it." If the operator possessed the degree of experience which proper instructions from her employer would have furnished, no negligence could be attributed to the

defendant, for no instructions were necessary, but unless her experience had that extent the employer was not relieved from the obligation to instruct her in regard to her duties and the dangers incident to her occupation : Sheetram v. Trexler, Stave, etc. Co., 13 Pa. Superior Ct. 219 ; Royer v. Tinkler, 16 Pa. Superior Ct. 457.

The case as presented by the plaintiff's evidence did not permit the affirmation of the defendant's sixth point (fourth assignment). It assumes that the jumping and jerking of the machine was the sole cause of the accident and that because the girl knew of this irregularity of action she assumed the risk. It does not appear from the evidence that she knew the defect of which she complained was likely to produce the result which she experienced. She reported the action of the mangle to her employer because it did not do the work well and she testified positively that she did not consider it dangerous. The point also leaves out of consideration the absence of the finger guard and the alleged failure to instruct as to the proper mode of operating a machine in the condition in which that was shown to be by the plaintiff's evidence. The authorities above cited are pertinent to the question raised by this point.

We are not persuaded that the charge of the court as a whole was inadequate. The attention of the jury was called to the evidence of the defendant's witnesses bearing upon the controverted points and the case was submitted in a fair and impartial manner. Objection is made that the jury was not instructed in regard to the credit to be given to the testimony of interested and disinterested witnesses. There was some corroboration of the plaintiff as to her complaint in regard to the action of the mangle, and on the question of instruction to her the case stood practically on her testimony and that of her employer. The testimony of the witnesses, Kirk, McElroy, Stiles and Beggs, is contradicted in a substantial way as to the conversations of the plaintiff and is weakened to that extent. The attention of the court was not called to the matter now complained of and we are not satisfied that the defendant was prejudiced by the failure of the court to give the instruction referred to.

The first assignment of error is not made in conformity to

the requirements of rule 16 of this court and need not be considered. We have examined the evidence, however, relating to the effort to subpœna the witness, Moore, and are satisfied that the action of the court is not open to objection. It appeared that the case was called for trial on Wednesday, February 8; that the witness had been absent in Mexico, Cuba and New York for some time; that he came home on Monday evening and was absent during the day on Tuesday and Wednesday. Three attempts were made to subpœna him after his return from New York, all of which failed. The plaintiff states that she remained three hours at his house waiting to get a service of subpœna on him. The court was satisfied with the sufficiency of the proof to justify the admission of the evidence and we see no substantial reason to criticise this action, especially in view of the fact that the testimony was that offered at a former trial of the case in which the witness was examined and cross-examined at length. He was called as an expert upon one point only and the defendant was in no way surprised nor taken at a disadvantage. The case has been twice tried and a verdict rendered for the plaintiff at each trial. The facts having been found against the defendant, the judgment should be permitted to stand.

It is therefore affirmed.